IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY EARL WILLIAMS, (TDCJ-CID #759125) | § § § | |
| Petitioner, | § § | |
| VS. | § | CIVIL ACTION NO. H-13-0102 |
| WILLIAM STEPHENS, | § § § | |
| Respondent. | § § | |

**MEMORANDUM AND OPINION**

The petitioner, Rodney Earl Williams, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging three state felony convictions. The respondent filed a summary judgment motion on the ground that the petition for writ of habeas corpus was filed too late. (Docket Entry No. 18). Williams responded. (Docket Entries Nos. 23 & 26). Based on careful consideration of the pleadings, the motion and responses, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

**I.     Background**

A jury in the 185th Judicial District Court of Harris County, Texas found Williams guilty of the felony offenses of aggravated kidnaping, aggravated robbery, and aggravated sexual assault. (Cause Numbers 713885, 713886, and 713887). On July 30, 1996, the jury sentenced Williams to 40, 30, and 50 years in prison, respectively. The First Court of Appeals of Texas affirmed Williams's convictions on September 24, 1998. The Texas Court of Criminal Appeals refused Williams's petitions for discretionary review on February 24, 1999.

Williams filed applications for state habeas corpus relief on April 11, 2007, which the Texas Court of Criminal Appeals denied without written order on May 16, 2007. *Ex parte Williams,* Application No. 67,545-01 at cover; *Ex parte Williams,* Application No. 67,545-02 at cover; *Ex parte Williams,* Application No. 67,545-03 at cover.

On April 23, 2007, Williams filed motions for DNA testing with the trial court. The trial court denied the requests on August 20, 2007, finding that there was no evidence on which DNA testing could be performed. (Docket Entry No. 15-15, Clerk's Record of DNA Proceedings for Cause Number 713885, Vol. I, pp. 54-57; Docket Entry No. 15-14, Clerk's Record of DNA Proceedings for Cause Number 713886, Vol. I, pp. 54-57; and Docket Entry No. 16-3, Clerk's Record of DNA Proceedings for Cause Number 713887, Vol. I, pp. 54-57). On January 31, 2011, the First Court of Appeals affirmed the trial court's denial of DNA testing. *Williams v. State,* Nos. 01-07-00965-CR, 01-07-00966-CR, and 01-07-00967-CR, slip op. (Tex. App.—Houston [1st Dist.] 2011). The Texas Court of Criminal Appeals refused Williams's petitions for discretionary review on November 23, 2011. *Williams v. State,* P.D.R. Nos. 0354-11, 0355-11, and 0356-11.

On January 14, 2013, this court received Williams's federal petition. The petition was filed when Williams tendered it to the prison authorities for mailing to the district court. *Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998). The court presumes that Williams deposited his federal petition in the prison mail on the date he signed it, January 9, 2013. *Sonnier v. Johnson,* 161 F.3d 941, 945 (5th Cir. 1998).

Williams contends that his conviction is void for the following reasons:

(1)   trial counsel rendered ineffective assistance;

    (2)    the prosecutor suppressed favorable evidence, specifically, the existence of a third eyewitness, Paul Nezeaux; and

    (3)    postconviction counsel rendered ineffective assistance.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7).

The threshold issue is whether this petition was filed too late to permit this court to consider the claims.

**II.    Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), set a one-year statute of limitations for federal habeas corpus petitions. The statute provides in part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

### A. The Claims Based on Ineffective Assistance of Trial Counsel and Prosecutorial Misconduct (Grounds 1 & 2)

The limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.*, § 2244(d)(1)(A). Williams's convictions became final when the time for filing a petition for a writ of certiorari expired, ninety days after the Texas Court of Criminal Appeals denied review. Supreme Court Rule 13.1 (West 2002). The Texas Court of Criminal Appeals refused Williams's petitions for discretionary review on February 24, 1999. Williams's deadline for filing a petition for a writ of certiorari was May 25, 1999. The limitations period ended one year later, on May 25, 2000. Williams did not file this federal petition until January 9, 2013.

A properly filed application for state postconviction relief tolls limitations. 28 U.S.C. § 2244(d)(2)(West 1997). The one-year limitations period began on May 25, 1999, but Williams waited until January 9, 2013 before filing his federal petition. Williams's state applications did not toll the limitations period because he filed them after the limitations period had ended. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

As noted, Williams filed a motion for DNA testing. In *Hutson v. Quarterman*, 508 F.3d 236 (5th Cir. 2007) (per curiam), the Fifth Circuit held that "a motion to test DNA evidence under Texas Code of Criminal Procedure article 64 constitutes 'other collateral review' and thus tolls AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)." *Id.* at 240. Even if a motion for DNA

testing would normally toll the limitations period, Williams's motion did not do so because it was filed long after the statute of limitations had expired.

Williams does not identify any grounds for equitable tolling and the record discloses none. *See, e.g., Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (finding that confiscation of legal materials and an inadequate law library did not establish grounds for equitable tolling where the alleged impediments to filing a federal petition were removed six months before the end of the limitations period), *cert. denied*, 532 U.S. 963 (2001); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.) (finding that alleged inadequacies in prison law library and lack of notice of AEDPA's requirements did not warrant equitable tolling), *cert. denied*, 531 U.S. 1035 (2000); *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.) (finding that unfamiliarity with the legal process or lack of representation during the applicable filing period did not merit equitable tolling), *cert. denied*, 528 U.S. 1007 (1999).

Williams may not rely on his status as an unskilled layperson to excuse the delay in filing this petition. Ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not excuse late filing. *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir. 2000); *Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999); *Davis v. Johnson,* 158 F.3d 806, 808-12 (5th Cir. 1998); *Barrow v. S.S. Ass'n,* 932 F.2d 473, 478 (5th Cir. 1991). *See United States v. Flores,* 981 F.2d 231, 236 (5th Cir. 1993) (an inmate's *pro se* status, illiteracy, deafness, or lack of legal training are factors external to the inmate that excuse an abuse of the writ); *Saahir v. Collins,* 956 F.2d 115, 118-19 (5th Cir. 1992) (holding that neither prisoner's *pro se* status nor ignorance of the law constitutes "cause" for failing to include legal claim in prior petition); *see also Worthen v. Kaiser,* 952 F.2d 1266, 1268-68 (10th Cir. 1992) (petitioner's failure to discover the legal significance of the operative facts

does not constitute cause). Proceeding *pro se* is not a "rare and exceptional" circumstance that justifies the equitable tolling of limitations. *Pro se* litigants are the rule, not the exception, in section 2254 suits. *Cf. United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993). Williams's *pro se* status does not present a rare and exceptional circumstance excusing the delay in filing his federal habeas petition.

Williams does not satisfy any of the exceptions to the AEDPA statute of limitations. The record does not indicate that any unconstitutional state action prevented Williams from filing an application for federal habeas relief before the limitations period ended. 28 U.S.C. § 2244(d)(1)(B). Williams's claims do not relate to a constitutional right the Supreme Court recognized within the last year and made retroactive to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C). Williams's claims relate to his July 1996 trial. 28 U.S.C. § 2244(d)(1)(D).

Williams argues that he discovered the basis for his prosecutorial misconduct claim during the postconviction DNA proceedings. Williams contends that the evidence of prosecutorial misconduct was attached to the State's response to his DNA request. The State filed a response on August 14, 2007. (Docket Entry No. 15-15, Clerk's Record of DNA Proceedings for Cause Number 713885, Vol. I, pp. 38-49; Docket Entry No. 15-14, Clerk's Record of DNA Proceedings for Cause Number 713886, Vol. I, pp. 38-49; and Docket Entry No. 16-3, Clerk's Record of DNA Proceedings for Cause Number 713887, Vol. I, pp. 38-49). Assuming that the statute of limitations began to run on September 20, 2007, when Williams appealed the denial of DNA testing. This is the latest possible date Williams learned of his claim. Williams had until September 20, 2008 to file his federal § 2254 petition. Williams did not do so until January 9, 2013 . This claim is time-barred.

Alternatively, the claim lacks merit. Williams alleges that the prosecutor failed to disclose favorable evidence. "'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The prosecution's duty to disclose evidence material to either guilt or punishment applies even when there is no request by the accused. *Banks v. Dretke*, 540 U.S. at 690 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)); *United States v. Agurs*, 427 U.S. 97 (1976). This duty applies to exculpatory and impeachment evidence. *Strickler v. Greene*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Undisclosed evidence is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). A reasonable probability of a different result is shown when nondisclosure puts the case in a different light so as to undermine confidence in the jury verdict. *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995). "[I]nadmissible evidence may be material under *Brady*." *Spence v. Johnson*, 80 F.3d 989, 1005 n.14 (5th Cir. 1996). The key is "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999). To establish a violation, "a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." *United States v. Garcia*, 567 F.3d 721, 735 (5th Cir.) (quoted cases omitted), *cert. denied*, --- U.S. ---, 130 S. Ct. 303 (2009).

Assuming that the prosecutor suppressed the evidence of a third eyewitness, Williams has not shown that this witness would have testified favorably for the defense. Williams states that the offense report showed that there were three eyewitnesses to the January 16, 1999 incident: Karen Skillern, Mark Kennedy, and Paul Nezeaux. Mark Kennedy testified that he saw the complainant, Erma Martin, in a heated argument with Williams and that Martin was struggling to get away from Williams. Kennedy decided to call the police. He drove down the street and saw a patrol vehicle. He directed the officer's attention to the couple. (Docket Entry No. 17-4, Reporter's Record, pp. 81-87). Karen Skillern testified that she saw Martin and Williams as they were walking across the street. She testified that she never saw Williams pull a knife on Martin. (Docket Entry No. 17-5, Reporter's Record, pp. 79-86).

Erma Martin testified that she had met Williams in March of 1991. They lived together for brief periods, were married for a short time, and had a child together. On January 16, 1996, Williams came to the store where she worked. After he left, Martin went to the back of the store and called the police. After making sure that Williams was not outside the store, Martin left the store. Williams approached from a different direction and demanded that she take him to a job interview. She tried to walk away, but Williams grabbed her by the arm, forced her into her car, and told her to drive. Williams took Martin's purse, money, and keys. When they were in the car, Williams pulled a knife and threatened to kill her. As she drove, Williams began touching her breasts and vagina.

Williams forced Martin to drive to her apartment, where he sexually assaulted her. He then ordered her to get back in the car and they drove to pick up the children at their grandmother's home. Williams then ordered Martin to drive to a convenience store. As they walked into the store, Martin

ran back to the car, ordered her children to lock the doors, and drove away. Williams jumped on the car to try to stop her. (Docket Entry No. 17-4, Reporter's Record, pp. 103-119; Docket Entry No. 17-5, Reporter's Record, pp. 1-15).

Williams testified that he never pulled a knife on Martin and that they had consensual sex. (Docket Entry No. 17-6, Reporter's Record, p. 1).

Martin gave graphic testimony about how Williams kidnaped her, robbed her, and sexually assaulted her. Williams has not established that the testimony of a third eyewitness, Nezeaux, was material because he has not shown a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Williams's prosecutorial misconduct claim lacks merit.

### B. The Claim Based on Ineffective Assistance of Counsel During DNA Proceedings (Ground 3)

Williams contends that he received ineffective assistance of counsel in his article 64 proceedings. Under Texas law, a convicted person may submit to the convicting court a motion requesting DNA testing of evidence containing biological material. TEX. CODE CRIM. P. art. 64.01(a). The convicted person must demonstrate that the evidence "was secured in relation to the offense that is the basis of the challenged conviction and was in possession of the state during the trial of the offense," but that the State has not previously tested it. *Id.*, art. 64.01(b). Additionally, the convicted person must show that the identity of the perpetrator was or is an issue in the case and must establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *Id.*, art. 64.03(a)(1)(B), (2)(A). If these requirements are met, the state court may order DNA testing. *Id.*, art. 64.03(b). After examining the

results of the testing, the convicting court must hold a hearing and find whether it is reasonably probable that the person would not have been convicted had the results been available during trial. *Id.*, art. 64.04.

Federal habeas relief is available only if a petitioner shows he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Any right Williams may have to postconviction DNA testing arises under Texas law and does not raise a federal constitutional issue. *See Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir. 1999); *see also Richards v. District Attorney's Office,* 355 F. App'x 826, 826 (5th Cir. 2009) (unpublished). The claim that the chapter 64 proceeding was defective is based on state law and provides no basis for federal habeas relief. Moreover, it is well established that there is no constitutional right to counsel in a post-conviction proceeding. "States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987) (citation omitted). While the Supreme Court recently held that ineffective assistance of postconviction counsel can, in certain circumstances, constitute cause for a procedural default, *see Martinez v. Ryan,* —— U.S. ——, 132 S. Ct. 1309 (2012), *Martinez* does not create a freestanding constitutional claim for ineffective assistance of state postconviction counsel. Williams is not entitled to federal habeas corpus relief on his claim.

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The pleadings and state court records show that Williams's federal petition is barred by limitations and lacks merit. Respondent is entitled to judgment as a matter of law.

### III. Williams's Motion to Stay and Abate Proceedings

Williams has moved to stay and abate proceedings so that he can present his actual-innocence claim in state court. (Docket Entries Nos. 27 & 28). The United States Supreme Court has decided that the federal habeas corpus statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), do not deprive district courts of the authority to issue a stay. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). The Supreme Court warned that:

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. *Cf. Duncan, supra,* at 180, 121 S. Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would . . . increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

*Id* at 277.

A stay may be justified when a petitioner "run[s] the risk of forever losing [his] opportunity for any federal review of [his] unexhausted claims." *Id.* at 275. A stay for failure to exhaust state remedies is proper only in "limited circumstances," when the following criteria are satisfied: (1) there was good cause for the failure to exhaust; (2) the proposed claims are not plainly meritless; and (3) there is no indication that the failure to exhaust was for purposes of delay. *See id.* at 277. There are other limits on a stay:

> Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. Though, generally, a prisoner's "principal interest . . . is in obtaining speedy federal relief on his claims," *Lundy, supra*, at 520, 102 S. Ct. 1198 (plurality opinion), not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review.

*Rhines v. Weber*, 544 U.S. at 277-78.

The *Rhines* Court cautioned that district courts should place reasonable time limits on a petitioner's trip to state court and back. *Rhines*, 544 U.S. at 278 (citing *Zarvela v. Artuz*, 254 F.3d 374, 381 (2nd Cir. 2001) ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed")). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. *See Zarvela*, 254 F.3d at 380-381.

The factors the *Rhines* Court points to lead to a denial of a stay in this case. *Rhines* prohibits the abeyance of federal proceedings when "a petitioner engages in abusive litigation tactics or intentional delay[.]" 544 U.S. at 278. Abatement is available when a petitioner shows diligence in asking for such an extraordinary procedure. An inmate seeking to advance unexhausted claims should request a stay early in federal litigation, preferably by filing a "'protective' petition in federal court" and then expeditiously moving for a stay. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Williams filed his federal petition in January 2013 but did not move to stay and abate until August 13, 2013. (Docket Entries Nos. 27 & 28). By that time, both parties had extensively briefed the

other legal and factual issues. Pausing the federal action at this late date "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "also undermines AEDPA's goal of streamlining federal habeas proceedings[.]" *Rhines,* 544 U.S. at 277. Williams's eight-month delay in requesting a return to state court discourages the granting of a stay.

Second, federal law predicates the exhaustion doctrine, including the stay-and-abeyance safety valve, on the availability of state court remedies. *See* 28 U.S.C. § 2254(B)(1). Texas strictly enforces its abuse-of-the-writ doctrine, codified at TEX. CODE CRIM. PRO. art. 11.071 § 5(a), and generally prohibits the filing of successive habeas applications. While article 11.071 allows the filing of a successive state habeas application in limited circumstances, Williams does not show that he can meet the requirements for its application.[1] Because Texas would apply its procedural law to prohibit the filing of a successive state application, staying Williams's federal petition would needlessly delay these proceedings. Williams has not shown entitlement to abatement under *Rhines.*

## IV. Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 18), is granted. Williams's petition for a writ of habeas corpus is denied. This case is dismissed with prejudice. Williams's motions for leave to file objection, (Docket Entry Nos. 19 & 20), are granted. Williams's motion for leave to file a motion for summary judgment, (Docket Entry No. 22), is granted.

---

[1] Article 11.071 § 5(a)(1) authorizes the filing of a successive application when the claims "have not been and could not have been presented previously . . . because the factual or legal basis for the claim was unavailable[.]" Sections 5(a)(2) and (3) require a persuasive showing of actual innocence, which Williams does not make. *See Ex parte Davis,* 947 S.W.2d 216, 237 (Tex. Crim. App.1996) (finding that "[t]he 'actual innocence' standard embodied in Subsections 5(a)(2) and 5(a)(3) mirrors that for bringing successive writ applications in federal habeas review of state convictions").

Williams's motion of objection, (Docket Entry No. 23), is denied. Williams's motion to amend, construed as a motion to consolidate pleadings, (Docket Entry No. 25), is denied. Williams's motion for summary judgment, (Docket Entry No. 26), is denied. Williams's motions for stay and abeyance, (Docket Entries Nos. 27 & 28), are denied. All remaining pending motions are denied as moot.

The showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 429 U.S. 473, 483 (2000)). An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Rudd v. Johnson,* 256 F.3d 317, 319 (5th Cir. 2001) (citing *Slack,* 529 U.S. at 484). Williams has not made the showing necessary for a COA.

SIGNED on November 26, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge